IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WM HIGH YIELD FUND, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 04-3423 |
| MICHAEL A. O'HANLON, et al. | : | |

MEMORANDUM

Legrome D. Davis, J.                                                                             June 27, 2013

Plaintiffs – six institutional Funds[1] that invested in debt securities issued by Diagnostic Ventures, Inc. (DVI)[2] – sue for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5(a),(c), 17 C.F.R. § 240.10b-5(a),(c), and imposition of liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).[3] Jurisdiction is the Exchange Act, 15 U.S.C. § 78aa, and federal question, 28 U.S.C. § 1331.

Defendant Matthew Colasanti – an internal consultant for DVI who managed its loan "workout group"[4] – moves for summary judgment (Doc. No. 259). Fed. R. Civ. P. 56. The motion asserts that the record is devoid of evidence to support the essential elements of a private securities action – primarily, manipulative or deceptive conduct by Colasanti and reliance by the

---

[1] The Plaintiff Funds are WM High Yield Fund; WM Income Fund; WM VT Income Fund; AT High Yield Fund; AT Income Fund; and Stellar Funding, Ltd.

[2] Diagnostic Ventures, Inc. (DVI, Inc.) was a Delaware corporation with two operating subsidiaries, DVI Business Credit, Inc. ("DVI BC") and DVI Financial Services, Inc. ("DVI FS"). Compl. ¶¶ 3, 54-55. Here, "DVI" refers to all three business entities.

[3] For the history and factual background of this action see WM High Yield Fund v. OHanlon, No. 04-3423, 2005 WL 6788446 (E.D. Pa. May 13, 2005) (Apr. 29, 2005 Order and May 13, 2005 Amended Mem., Doc. Nos. 108, 112; and Feb. 23, 2006 Order, Doc. No. 165).

[4] Defendant Matthew Colasanti testified: "The [workout] process is a result of a borrower . . . becoming past due in his payments." Oct. 2, 2007 Colasanti Dep., 46:1-4, Def. Ex. 7, Doc. No. 259-9 at 4. "[The workout process] is, simply put, to try to cure the ills of the borrower, to get it back into a paying mode. We wanted our money back. And [the five members of the workout group] took the responsibility of the strategy and carrying out the strategy to get that money back." Id., 44:2-21, 53:8-14, Def. Ex. 7, Doc. No. 259-9 at 3, 7. See also Def. Colasanti's Statement of Facts (SOF) ¶9, Doc. No. 259.

Plaintiff Funds on any of his allegedly deceptive conduct.[5] Furthermore, the motion asserts that Colasanti cannot be held liable under Section 20(a) because the record does not contain proof of a threshold requirement – that Colasanti actually controlled DVI, the alleged violator of the securities laws, Section 10(b). As to other Section 20(a) elements, it is asserted that Colasanti was not a culpable participant in DVI's fraud and he acted in good faith. The motion for summary judgment was filed on April 30, 2009, but Plaintiffs have not responded to it.

The motion for summary judgment will be granted. The record does not show that investors relied on any manipulative or deceptive conduct by Colasanti. Also, the record establishes that he was not a person who had actual power or influence over the allegedly controlled violator of the securities laws, DVI.

I. PROCEDURAL AND FACTUAL BACKGROUND

The Complaint, as filed on July 19, 2004, avers that during August 10, 1999 through August 13, 2003, the Plaintiff Funds invested in DVI's bonds that traded on the New York Stock Exchange (NYSE) – 9 $^{7/8}$ percent "Senior Notes," which had been issued in 1997 and 1998.[6] Compl. ¶¶ 1, 12, 285. During that four-year period, it is averred that Colasanti, individually and

---

[5] The essential elements of a Section 10(b) and Rule 10b-5 private cause of action are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148, 157, 159 (2008); accord Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 n.3 (U.S. 2011).

[6] The Complaint invokes a presumption of reliance on "the integrity of the market price of the Senior Notes." Compl. ¶¶ 1, 12, 285, 290, 297. Under the "fraud-on-the-market doctrine, a plaintiff investor that buys or sells a publicly-traded security may invoke a rebuttable presumption of reliance on the integrity of the market price for that security. Basic, Inc. v. Levinson, 485 U.S. 224, 247 (1988). Most publicly available information is reflected in the security's market price. Id. When statements or conduct become public, "[t]hen it can be assumed that an investor who buys or sells stock at the market price relies upon the statement [or conduct]." Stoneridge, 552 U.S. at 159 (citing Basic, 485 U.S. at 247).

together with other DVI officers, directors, and business entities "engaged in a scheme to falsify DVI's financial results and overstate its earnings by at least $120 million." Id. ¶ 1. This was done to "deceive . . . the investing public as to the true financial condition of DVI," and "artificially inflate and maintain the market price of DVI's securities" – all in violation of Section 10(b) and Rule 10b-5. Id. ¶¶ 6, 33, 40, 44, 238, 240- 242, 291-299 (Count I).

It is averred that Colasanti was "an Internal Consultant for DVI and the head of DVI's internal loan workout group," who reported to DVI's CEO, Defendant Michael A. O'Hanlon and his "right-hand man," Defendant Richard E. Miller. Compl. ¶¶ 27, 29, 33, 40. It is averred that the group of named individual Defendants, which is defined to include Colasanti, "was responsible for or participated in drafting, producing and disseminating the false and misleading statements alleged . . . and orchestrating the deceptive scheme to manipulate the Company's credit and accounting practices and policies." Id. ¶¶ 44, 40-44.

The Complaint contains no averments as to any actionable statements made specifically by Colasanti. It contains only some averments as to actionable conduct specifically by Colasanti:

- "DVI adopted an internal policy effective as of FY 2002 pursuant to which it would no longer accrue income on any loan on which a payment had not been made within the past 180 days. This policy . . . had one exception – DVI could continue to recognize and accrue income on these delinquent loans when the head of DVI's internal workout group, Matt Colasanti, approved the accruals . . . ." Compl. ¶ 73.

- "Garfinkel . . . in a Spring 2002 memo to O'Hanlon and Miller . . . noted that Colasanti and others needed to create 'for the files' forbearance documentation [for delinquent loans "that were actually in default"] . . . ." Id. ¶ 77.

- Others were involved in workouts of delinquent loans and worked with Colasanti on those arrangements. See id. ¶ 240.

- "Colasanti also knowingly or recklessly approved accruals to report income on delinquent loans (overdue more than 180 days), which falsely enhanced DVI's reported income." Id. ¶ 241.

3

- O'Hanlon requested and Colasanti participated in "a plan to aid a borrower friend of O'Hanlon's by ramming through without proper Credit Committee approval $4.5 million in working capital 'loans' that were intended to be used by the borrower solely to make the monthly payments due to DVI . . . ." Id. ¶ 242.

In addition, it is averred that the group of named individual Defendants were "controlling persons of DVI" under 15 U.S.C. § 78t. Compl. ¶¶ 41, 300-303 (Count II). "By reason of" their positions with DVI, it is averred, they "controll[ed] the content" of its public statements, and they "participated in the drafting, preparation, and/or approval of such statements." Id. ¶¶ 41, 42-44, 303. Also "[b]y virtue of" their positions, they "had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading." Id. ¶ 301. And given their "direct involvement in the day-to-day operations of the Company," it is contended, they are "presumed to have had the power to control or influence the particular transactions giving rise to the securities violations" here. Id. ¶ 302. In regard to the individual Defendants' alleged control of DVI, the Complaint does not contain any averments as to any conduct or statements made specifically by Colasanti.

On November 1, 2004, Colasanti, and other Defendants, separately moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Def. Colasanti's Mot, Doc. No. 39. As to Colasanti, the Court dismissed all claims except those asserting scheme liability[7] under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5(a), (c),

---

[7] Subsections (a) and (c) of Rule 10b-5, respectively, make it unlawful to "employ any device, scheme, or artifice to defraud," and to "engage in any act, practice, or course of business which operates . . . as a fraud." 17 C.F.R. § 240.10b-5(a), (c). Subsection (b) of Rule 10b-5 prohibits "mak[ing] any untrue statement of material fact" or omitting a material fact necessary to clarify prior misleading statements. 17 C.F.R. § 240.10b-5(b). "We refer to claims under Rule 10b-5(a) and (c) as 'scheme liability claims' because they make deceptive conduct actionable, as opposed to Rule 10b-5(b), which relates to deceptive statements." In re DVI, Inc. Sec. Litig., 639 F.3d 623, 643 n.29 (3d Cir. 2011), abrogated on other grounds, 133 S. Ct. 1184 (U.S. 2013).

17 C.F.R. § 240.10b-5(a), (c) (Count I), and liability as a "controlling person" under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (Count II). WM High Yield Fund v. OHanlon, No. 04-3423, 2005 WL 6788446, at *6, 8, 9-10, 14-15, 17-18 (E.D. Pa. May 13, 2005) (Apr. 29, 2005 Order and May 13, 2005 Amended Mem., Doc. Nos. 108, 112; and Feb. 23, 2006 Order, Doc. No. 165). Specifically, it was ruled that the Complaint does not contain any averments that Colasanti made an actionable statement or omission and, as to him, the Rule 10b-5(b) claims were dismissed. Id., 2005 WL 6788446, at *6, 8 (also "only Defendants to whom a misleading statement is attributable may be held liable"). It was also ruled that to the extent that Plaintiffs sought to hold Colasanti, among other Defendants, "liable as 'secondary' violators" under Section 10(b), those claims were dismissed. Feb. 23, 2006 Order, Doc. No. 165; see also WM High Yield Fund, 2005 WL 6788446, at *7 (ruling that Cent. Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A., 511 U.S. 164 (1994) precluded "secondary" or "aiding and abetting" liability).

By July 1, 2009, Plaintiffs' response to the instant motion for summary judgment was due.[8] On August 26, 2009, Colasanti moved for the entry of unopposed summary judgment (Def. Mot., Doc. No. 288). That motion was denied because "'[T]he mere fact that a motion is uncontested is not enough by itself to warrant granting it.'" Aug. 26, 2009 Order, Doc. No. 290 (quoting Local R. Civ. P. 7.1 cmt. 3(c)). "Rather, 'the court reviews all summary judgment issues, contested and uncontested, by the same standard.'" Id.

By Order dated February 26, 2013 (Doc. No. 304), the parties were permitted to supplement their moving papers with concise briefing on significant rulings recently issued by

---

[8] In this action, fact discovery closed on May 2, 2008 (Seventh Am. Case Mgmt. Order, Doc. No. 243), and expert discovery closed on March 2, 2009 (Ninth Am. Caase Mgmt. Order, Doc. No. 250).

5

the Supreme Court, our Court of Appeals, and this Court. Neither the Plaintiff Funds nor Defendant Colasanti submitted supplementary papers. The motion for summary judgment will now be decided.

II. SUMMARY JUDGMENT FINDINGS OF UNDISPUTED MATERIAL FACT

1. The Complaint does not contain any averments that Colasanti made a public statement about DVI – at any time, to anybody. See WM High Yield Fund, 2005 WL 6788446, at *6, 8; see also Def. Colasanti's Statement of Facts (SOF) ¶ 13, Doc. No. 259.

2. The Complaint does not contain any averments that Colasanti made any false, misleading, or fraudulent statements or omissions contained in DVI's public filings. See WM High Yield Fund, 2005 WL 6788446, at *6, 8; see also Def. Colasanti's SOF ¶ 13.

3. The Complaint does not contain any averments that the Plaintiff Funds relied on any conduct or statements made by Colasanti in deciding to purchase or sell DVI's securities. See Def. Colasanti's SOF ¶ 14.

4. Colasanti did not sign any of DVI's public filings with the Securities and Exchange Commission (SEC). Def. Colasanti's SOF ¶ 18; Pls. Omnibus Brief in Opposition to All Defs. Mots. to Dismiss the Compl. at 67-68, Doc. No. 63-1 at 14-15.

5. DVI's loan workout group had no role and did not participate in DVI's accounting and financial reporting. Def. Colasanti's SOF ¶ 19; Oct. 2, 2007 Colasanti Dep., 416:15-21, Def. Ex. 7, Doc. No. 259-9 at 26 ("I and the people that worked for me had nothing to do with the accounting procedures at DVI. . . . Couldn't recommend an accouting procedure, couldn't talk about it, had nothing to do with it.").

6. Colasanti did not have responsibility for and did not participate in any accounting functions – for example, any credit underwriting, drafting or signing of SEC filings, or assessment of whether DVI or its subsidiaries had complied with generally accepted accounting principles. Def. Colasanti's SOF ¶ 20; Oct. 2, 2007 Colasanti Dep., 416:15-21, 505:17-507:3, Def. Ex. 7, Doc. No. 259-9 at 26, 34-36; Pls. Omnibus Br. at 67-68, Doc. No. 63-1 at 14-15.

7. Colasanti did not have responsibility for and did not participate in any finance or treasury functions – for example, the securitization of loans, creation of any Special Purpose Entity,[9] any "round-trip" financing between DVI's subsidiaries,[10] repurchasing delinquent loans, the source of funds for making loans, and the pledging or double-pledging of collateral on any DVI loans. Def. Colasanti's SOF ¶ 21; Oct. 2, 2007 Colasanti Dep., 505:17-507:3, Def. Ex. 7, Doc. No. 259-9 at 34-36.

8. Colasanti was not responsible for setting loan loss reserves for the company, which operated "in twenty countries," but he made recommendations regarding loss allowances for some customers. Def. Colasanti's SOF ¶ 22; Oct. 2, 2007 Colasanti Dep., 287:21-288:10, Def. Ex. 7, Doc. No. 259-9 at 18-19.

9. When asked at deposition who was "ultimately responsible" for loan workouts at DVI, Colasanti testified: "There's only one way to answer that, and that is Mr. O'Hanlon." Oct. 2, 2007 Colasanti Dep., 50:20-23, Def. Ex. 7, Doc. No. 259-9 at 5.

---

[9] See WM High Yield Fund, 2005 WL 6788446, at *1 & n.1 (adopting the language used by the parties, the "Special Relationship Entities" are Oncure Technologies Corp., an owner of radiology/oncology facilitites; PresGar Imaging LLC, an owner and operator of imaging facilitites; and Dolphin Medical Inc., an owner of cancer treatment centers.)

[10] "Round-trip" financing is a term used by Plaintiffs to refer to certain inter-company transfers of funds as between DVI's subsidiaries, DVI FS and DVI BC. See, e.g., Compl. ¶¶ 66, 64-67.

10. The record does not contain any evidence that Colasanti made a public statement about DVI – at any time, to anybody – and none of the allegedly false and misleading statements averred in the Complaint was ever publicly attributed to him. See WM High Yield Fund, 2005 WL 6788446, at *6, 8; see also Def. Colasanti's SOF ¶ 13; Compl. ¶¶ 104-181 (alleged misstatements).

11. The record does not contain any evidence that Colasanti acted in a misleading, manipulative, deceptive, or fraudulent manner – and none of the allegedly fraudulent conduct averred in the Complaint was ever publicly attributed to him. Def. Colasanti's SOF ¶ 14.

12. The record does not contain any evidence of public conduct or statements made by Colasanti that affected the market price for DVI's securities. Def. Colasanti's SOF ¶¶ 13, 14.

13. The record does not contain any evidence that Colasanti publicly made or adopted any false, misleading, or fraudulent statements or omissions contained in DVI's public filings. Def. Colasanti's SOF ¶¶ 13, 18. See also WM High Yield Fund, 2005 WL 6788446, at *6, 8.

14. The record does not contain any evidence that the Plaintiff Funds relied on any public conduct or statements made by Colasanti in deciding to purchase or sell DVI's securities. Def. Colasanti's SOF ¶ 14.

15. Colasanti was not a member or participant of DVI's Board of Directors, and he was not a high-ranking officer of DVI. Def. Colasanti's SOF ¶ 18; Pls. Omnibus Br. at 67-68, Doc. No. 63-1 at 14-15.

16. While working with DVI's loan workout group, Colasanti expressed his concerns about "the ability of a vast array of people across DVI to end the suspension of income and recognize income" on delinquent loans. Oct. 2, 2007 Colasanti Dep., 453:4-455:2, Def. Ex. 7,

Doc. No. 259-9 at 29-31. He drafted a policy that would limit the people who could reverse the suspension of income on delinquent loans to himself and Michael O'Hanlon. Id.; Def. Colasanti's SOF ¶ 26.

17. The policy was not implemented. Def. Colasanti's SOF ¶ 27; Oct. 2, 2007 Colasanti Dep., 453:4-455:2, Def. Ex. 7, Doc. No. 259-9 at 29-31.

18. Colasanti presented his concerns to DVI's senior management regarding company practices that troubled him. Def. Colasanti's SOF ¶ 28.

19. In June 2002, Colasanti raised questions about the adequacy of the company's allowances for loan losses. Def. Colasanti's SOF ¶ 29; Mar. 4, 2008 John Boyle Dep., 788-794, Def. Ex. 8, Doc. No. 259-10 at 3-5.

20. About ten times between February 2000 and February 2002, Colasanti complained to O'Hanlon that DVI was making too many bad loans. Def. Colasanti's SOF ¶ 30; Oct. 2, 2007 Colasanti Dep., 158:23-160:23, 267:13-268:23, Def. Ex. 7, Doc. No. 259-9 at 9-11, 16-17.

III. DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). This requires "affirmative evidence . . . from which a jury might return a verdict in his favor." Id. at 257; Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (must set forth specific facts showing the existence of a genuine issue for trial); Matsushita Elec. Indus. Co., Ltd.

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (ruling that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial") (citation and internal quotation marks omitted).

After adequate time for discovery, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. The moving party discharges its burden by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." Id. at 325. If the movant succeeds in doing so, there can be no genuine triable disputes because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323-25.

    A.    Section 10(b) and Rule 10b-5 Claims

Plaintiffs have the burden of proving at trial their reliance upon manipulative or deceptive conduct by the defendant – elements for proof in any private action under Section 10(b) and Rule 10b-5(a) and (c). Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148, 157, 159 (2008) ("essential" elements); accord Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 n.3 (U.S. 2011); Central Bank, 511 U.S. at 180 ("critical for recovery under 10b-5"); Basic. Inc. v. Levinson, 485 U.S. 224, 243 (1988) ("[r]eliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury").

Considering the record as a whole together with the additional facts submitted by Colasanti, there are no triable disputes as to any of the essential elements of a private securities fraud action. Importantly, the record contains no evidence of the requisite reliance on any public

10

conduct or statements made by Colasanti – whether innocent or instead, misleading, manipulative, deceptive, or otherwise fraudulent. The record does not establish that the Plaintiff Funds knew about or otherwise relied on anything said or done by Colasanti at the time that they purchased or sold DVI's securities. Moreover, the record shows that none of the alleged misconduct and misrepresentations were publicly made by or attributed to Colasanti.

Reliance may not be presumed here. In a related private securities action that involved Clifford Chance's role as DVI's legal counsel,[11] our Court of Appeals ruled that Plaintiffs

> cannot invoke the fraud-on-the-market presumption of reliance in a private action under Rule 10b-5(a) and (c) unless the deceptive conduct has been publicly disclosed and attributed to the actor. . . . [B]ecause plaintiffs do not contend Clifford Chance's alleged role in masterminding the fraudulent 10-Q was disclosed to the public, they cannot invoke the presumption.

In re DVI, Inc. Sec. Litig., 639 F.3d 623, 649 (3d Cir. 2011), abrogated on other grounds, 133 S. Ct. 1184 (U.S. 2013). For largely the same reasons, the record here compels a similar conclusion as to Colasanti's position and conduct as the manager of DVI's loan workout group. Plaintiffs have not shown that the allegedly deceptive conduct was publicly disclosed and attributed to Colasanti: "It is insufficient to show only that the deceptive conduct was publicly disclosed through other statements or conduct; the public must be made aware of the defendant's acts." DVI, 639 F.3d at 648 (citations and internal quotation marks omitted); see also Stoneridge, 552 U.S. at 160 (rejecting the argument that "investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect").

---

[11] See In re DVI, Inc. Sec. Litig., No. 03-5336, 2013 WL 56073 (E.D. Pa. Jan. 4, 2013), granting summary judgment in favor of Defendants Clifford Chance LLP and Clifford Chance U.S. LLP and against Plaintiffs as to all Section 10(b) claims contained in the Complaint. (Jan. 4, 2013 Order & Mem., Doc. Nos. 847, 848). In part, it was ruled that Janus and Stoneridge as well as rulings by our Court of Appeals in DVI, 639 F.3d 623 (3d Cir. 2011) controlled the outcome – "Plaintiff investors have not produced any evidence of individualized reliance" and therefore, "Clifford Chance cannot be held liable for assisting in the alleged deceptive scheme or for making any mis-statements in DVI's public filings." Id., 2013 WL 56073 at *5, 8.

On this record, Colasanti's position at DVI, and the degree of his involvement in day-to-day operations, is immaterial:

> Stoneridge . . . did not create a remoteness test for private causes of action. The fact that the vendors' conduct was "not disclosed to the investing public," id., is what made it too remote to invoke the presumption of reliance.

DVI, 639 F.3d at 646-47 (quoting Stoneridge, 552 U.S. at 161; footnote omitted); see also id. & n.32 (invocation of the fraud-on-the-market presumption of reliance as to Clifford Chance precluded because "we cannot materially distinguish the facts in this case from those in Stoneridge"). See also Pugh v. Tribune Co., 521 F.3d 686, 696-87 (7th Cir. 2008) (private cause of action not stated where executive had no role in preparing or disseminating the company's financial statements or press releases, and it was not alleged that the company's investors were informed of his false certification).

Plaintiffs suggest that Colasanti, as one of the group of individual Defendants, owed investors a "duty to disseminate promptly accurate and truthful information with respect to the Company's financial condition, operating performance, and prospects." Compl. ¶ 43. Perhaps this is an invocation of a rebuttable presumption of reliance under Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972), although no argument or evidence is provided. This presumption of reliance "is generally applicable only when material information is withheld from investors by a defendant having an affirmative duty of disclosure." DVI, 639 F.3d at 631 n.10 (citing Affiliated Ute, 406 U.S. at 153-54); Stoneridge, 552 U.S. at 159); see also id. at 643 n.30 (discussing the unsuccessful assertion of such a duty to disclose as to Clifford Chance).

If so proposed, such a duty to disclose would be without merit. "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic, Inc., 485 U.S. at 239 n.17. Generally, "an

12

affirmative duty arises only when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading prior disclosure." Winer Family Trust v. Queen, 503 F.3d 319, 329 (3d Cir. 2007) (citing Oran v. Stafford, 226 F.3d 275, 285-86 (3d Cir. 2000)). See also In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 218 (E.D. Pa. 2008) (Davis, J.) ("Affiliated Ute presumption is equally inapplicable because Clifford Chance owed no duty of disclosure to DVI's investors") (citing Stoneridge, 552 U.S. at 159), aff'd, 639 F.3d at 629, 643 n.30 (3d Cir. 2011)). As to Colasanti, no affirmative duty to disclose was ever pled. No applicable statute or case law is cited to support a finding that Colasanti, individually, owed a duty to disclose information to investors. On this record, Colasanti had no duty to disclose.

Moreover, the Plaintiff Funds have not submitted evidence of specific reliance on Colasanti's statements or conduct. Each Plaintiff must prove "reliance on a fraudulent material misrepresentation or omission," Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 174 (3d Cir. 2001), and reliance on the defendant's publicly disclosed, deceptive acts, Stoneridge, 552 U.S. at 159, 160-64. This includes proof that each was "aware of, and directly misled by, an alleged misrepresentation," Semerenko v. Cendant Corp., 223 F.3d 165, 178 (3d Cir. 2000), and that such statement or conduct caused each "to engage in the transaction in question," Newton, 259 F.3d at 174 (citations and internal quotation marks omitted). This Plaintiffs have not done.

  B. Section 20(a) Claims

"Section 20(a) of the Exchange Act imposes joint and several liability upon one who controls a violator of Section 10(b)." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 284 (3d Cir. 2006) ("plaintiff must prove that one person controlled another person or entity and

13

that the controlled person or entity committed a primary violation of the securities laws"). Here, it is alleged that Colasanti controlled DVI, and DVI committed a primary violation of the securities laws. However, the record is devoid of any evidence that he did so.

As previously ruled in a related securities action, Plaintiffs have the burden of demonstrating that Colasanti was a control person within the meaning of Section 20(a), including proof of an essential element – that he "had actual power or influence over the allegedly controlled person," DVI. In re DVI, Inc. Sec. Litig., No. 03-5336, 2005 WL 1307959, at *12 (E.D. Pa. May 31, 2005) (citing In re Mobile Media Sec. Litig., 28 F. Supp. 2d 901, 940 (D.N.J. 1998)); accord id., No. 03-5336, 2013 WL 247149, at *9-10 (E.D. Pa. Jan. 23, 2013). See 17 C.F.R. § 240.12b-2 ("The term 'control' . . . means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract or otherwise."). As to Colasanti, the allegations contained in the Complaint are not enough to meet this standard. Nor do those allegations discharge Plaintiffs' burden as the non-moving party to this summary judgment proceeding.

In fact, the record suggests that even as to the workout group that Colasanti managed, he did not fully exercise actual power and influence over the management of significant numbers of large-dollar delinquent loans. Instead, O'Hanlon exercised the ultimate decision-making authority over those loans. Moreover, the record contains no evidence that Colasanti culpably participated in DVI's fraud. The record suggests that in apparent good faith on a number of occasions, Colasanti presented to his superiors certain company practices that he believed were problematic and should be corrected. However, there is no need to decide the question as to his

14

good faith under Section 20(a).  This is so because the record does not contain any threshold evidence of Colasanti's actual control of DVI, the alleged violator of the securities laws, Section 10(b).

IV.     CONCLUSION

Absent any evidence showing that Colasanti publicly made any false, misleading, or otherwise fraudulent statements or omissions, or engaged in any manipulative or deceptive conduct that was communicated to the investing public or specifically to the Plaintiff Funds, the record fails to establish triable disputes as to the essential elements of this private securities fraud action – a material misrepresentation or omission, manipulative or deceptive conduct, and reliance.  Given this lack of evidence, proof of scienter, loss causation, and actual damages would fail as well.  Colasanti cannot be held liable under Section 10(b) or Rule 10b-5.  He also cannot be held liable under Section 20(a) as a person who controlled DVI, the alleged violator of the securities laws, Section 10(b).

An Order accompanies this Memorandum.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.