IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WM HIGH YIELD FUND, et al. | : | CIVIL ACTION |
| v. | : | |
| MICHAEL A. O'HANLON, et al. | : | No. 04-3423 |

MEMORANDUM

Legrome D. Davis, J.                                                                                                                                                  June 27, 2013

Plaintiffs – six institutional Funds[1] that invested in debt securities issued by Diagnostic Ventures, Inc. (DVI) – sue for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.[2] Jurisdiction is the Exchange Act, 15 U.S.C. § 78aa, and federal question, 28 U.S.C. § 1331.

Defendant Harold Neas, who was an audit partner at Deloitte & Touche LLP – DVI's former independent auditor – moves for summary judgment (Doc. No. 261). Fed. R. Civ. P. 56. The motion asserts that the record is devoid of evidence to support essential elements of a private securities action[3] – a material misstatement or omission by Neas and reliance by the Plaintiff Funds on any allegedly deceptive conduct or statements statements made by Neas.[4]

---

[1] The Plaintiff Funds are WM High Yield Fund; WM Income Fund; WM VT Income Fund; AT High Yield Fund; AT Income Fund; and Stellar Funding, Ltd.

[2] For the history and factual background of this action see WM High Yield Fund v. OHanlon, No. 04-3423, 2005 WL 6788446 (E.D. Pa. May 13, 2005) (Apr. 29, 2005 Order and May 13, 2005 Amended Mem., Doc. Nos. 108, 112; and Feb. 23, 2006 Order, Doc. No. 165).

[3] The essential elements of a Section 10(b) and Rule 10b-5 private cause of action are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148, 157, 159 (2008); accord Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 n.3 (U.S. 2011).

[4] Separately, Defendants Deloitte and Neas jointly moved for summary judgment (Doc. No. 262), asserting a failure of proof as to other essential elements of this private securities action – loss causation and damages. By another Order and Memorandum also dated June 27, 2013, summary judgment will be granted on these alternative grounds in favor of Deloitte and Neas, and against Plaintiffs, as to all claims contained in the Complaint.

Plaintiffs oppose summary judgment, asserting that Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148 (2008) and Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296 (U.S. 2011) do not preclude the Section 10(b) claims asserted here against Neas. Pls. Br., Doc. No. 269 at 6; Pls. Supp. Br., Doc. No. 313 at 12-13. They contend that the record presents triable disputes as to the essential elements of a private securities action.[5]

For DVI's fiscal years ended June 30, 1999 through June 30, 2002, it is asserted, Neas directed Deloitte to issue unqualified audit opinions on DVI's annual financial statements, which were "materially false and misleading," and "an extreme departure" from generally accepted auditing standards (GAAS).[6] Compl. ¶ 249. Neas' signature does not appear on Deloitte's audit opinions, but it is contended that "Plaintiffs relied on the unqualified audit opinions," and the audit opinions are "attributable directly to Neas." Pls. Br., Doc. No. 269 at 6-7.

Janus was decided after the initial briefing closed on the instant motion for summary judgment. The parties were permitted to supplement their moving papers with concise briefing on significant rulings recently issued by the Supreme Court, our Court of Appeals, and this Court. Feb. 26, 2013 Order, Doc. No. 304.

As permitted, Neas now submits that under Janus and Stoneridge, the record does not contain the requisite "evidence of the reliance and material misrepresentation elements of a

---

[5] Both sides submitted proposed undisputed facts, and Plaintiffs' submission responded specifically to the facts stated by Defendant Neas, disputing and objecting to many. Def. Neas' Statement of Facts (SOF), Doc. No. 261-2; Pls. Counter-Statement of Facts (CSOF), Doc. No. 270. Those responses do not present any genuine disputes material to a decision on the motion for summary judgment presented here.

[6] See generally United States v. Arthur Young & Co., 465 U.S. 805, 810-11, 818-19 & nn.13, 14 (1984) (explaining the role of an independent auditor, as required by SEC regulations, and the meaning of an auditor's unqualified opinion in the marketplace).

Section 10(b) securities fraud claim." Defs. Deloitte's & Neas' Supp. Br., Doc. No. 305 at 6, 5-7. See also Defs. Deloitte's & Neas' Supp. Br., Doc. No. 317 at 9-10; Defs. Deloitte's & Neas' Br., Doc. No. 263 at 1 n.1, 3-4; Defs. Deloitte's & Neas' Br., Doc. No. 286 at 1-3.

Plaintiffs submit that Stoneridge does not preclude Neas' liability. They now effectively acknowledge that no public statements were attributed to Neas; however, it is contended that "managerial employees can be liable for statements not expressly attributed to them." Pls. Supp. Br., Doc. No. 313 at 12-13. Also, they contend that Neas had "ultimate authority" over the audit opinions, including their content and whether and how to communicate them, and therefore, he can be held liable under Janus for Deloitte's audit opinions. Id.

The motion for summary judgment will be granted. The record does not show that Defendant Neas made any public statements that affected the market for DVI's securities or that the Plaintiff Funds relied on any public conduct or statements made by or attributable to Neas.

I. PROCEDURAL AND FACTUAL BACKGROUND

The Complaint, as filed on July 19, 2004, avers that during August 10, 1999 through August 13, 2003, the Plaintiff Funds invested in DVI's bonds that traded on the New York Stock Exchange (NYSE) – $9^{7/8}$ percent "Senior Notes," which had been issued in 1997 and 1998, and were due on February 1, 2004.[7] Compl. ¶¶ 1, 12, 285. During that four-year period, it is averred that Deloitte and Neas, individually and together with other DVI officers, directors, and business

---

[7] The Complaint invokes a presumption of reliance on "the integrity of the market price of the Senior Notes." Compl. ¶¶ 285, 290, 297. Under the "fraud-on-the-market doctrine, a plaintiff investor that buys or sells a publicly-traded security may invoke a rebuttable presumption of reliance on the integrity of the market price for that security. Basic, Inc. v. Levinson, 485 U.S. 224, 247 (1988). Most publicly available information is reflected in the security's market price. Id. When statements or conduct become public, "[t]hen it can be assumed that an investor who buys or sells stock at the market price relies upon the statement [or conduct]." Stoneridge, 552 U.S. at 159 (citing Basic, 485 U.S. at 247).

3

entities "engaged in a scheme to falsify DVI's financial results and overstate its earnings by at least $120 million." Id. This was done to "deceive . . . the investing public as to the true financial condition of DVI," and "artificially inflate and maintain the market price of DVI's securities" – all in violation of Section 10(b) and Rule 10b-5(a), (b), and (c). Id. ¶¶ 6, 277-279, 291-299 (Count I).

In regard to Neas, the gravamen of the Complaint avers that for fiscal years ended June 30, 1999 through June 30, 2002, "Deloitte, at the direction of Neas, issued unqualified audit opinions on DVI's annual financial statements . . . stating that Deloitte's audits were conducted in accordance with GAAS and that, in Deloitte's opinion, DVI's financial statements 'present[ed] fairly, in all material respects' DVI's and its subsidiaries' financial position, results of operations, and cash flows for those fiscal years in accordance with GAAP." Compl. ¶ 249; see also id. ¶¶ 5, 47-49, 107, 113, 127, 129, 139, 141, 166, 168. Other than the averment that Neas "directed" and "supervised" Deloitte's auditing of DVI, the Complaint does not contain averments of Neas' individual wrongdoing. See, e.g., id. ¶¶ 224, 229, 240, 249, 261, 267. Instead, it is averred that Deloitte improperly conducted the audits. Id.

It is averred that Deloitte's audit opinions "were materially false and misleading . . . and an extreme departure from GAAS." Compl. ¶¶ 1, 249, 277-279, 297. And the manner in which DVI reported its financial results as part of its annual Form 10-K filings "represented an extreme departure from GAAP." Id. ¶¶ 249, 248-279 (detailing alleged auditing and accounting deficiencies). Plaintiffs: "Without these materially false and misleading unqualified audit opinions, the fraud could not have been perpetuated." Id. ¶ 279.

On November 1, 2004, Deloitte and Neas jointly moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Defs. Mot, Doc. No. 53. It was ruled that all claims

4

against Neas were dismissed except those asserting liability under Section 10(b) and Rule 10b-5.[8] See WM High Yield Fund v. OHanlon, No. 04-3423, 2005 WL 6788446, at *6-8, 18 (E.D. Pa. May 13, 2005) (Apr. 29, 2005 Order and May 13, 2005 Amended Mem., Doc. Nos. 108, 112; and Feb. 23, 2006 Order, Doc. No. 165). It was also ruled that to the extent Plaintiffs sought to hold Neas, among other Defendants, "liable as 'secondary' violators" under Section 10(b), those claims were dismissed. Feb. 23, 2006 Order, Doc. No. 165; see also WM High Yield Fund, 2005 WL 6788446, at *7 (ruling that Cent. Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A., 511 U.S. 164 (1994) precluded "secondary" or "aiding and abetting" liability).

II. SUMMARY JUDGMENT FINDINGS OF UNDISPUTED MATERIAL FACT

1. The Complaint does not contain any averments that Neas made a public statement about DVI – at any time, to anybody. See also Def. Neas' Statement of Facts (SOF) ¶¶ 3, 6-7, Doc. No. 261-2, & Pls. Counter-Statement of Facts (CSOF), Doc. No. 270, ¶¶ 3, 6-7.

2. The Complaint does not contain any averments that Neas publicly made any false, misleading, or fraudulent statements or omissions contained in DVI's public filings with the Securities and Exchange Commission (SEC).

3. The Complaint does not contain any averments that the Plaintiff Funds relied on any conduct or statements made by Neas in deciding to purchase or sell DVI's securities. See also Def. Neas' SOF & Pls. CSOF, ¶ 7.

---

[8] Claims are asserted against Neas under Rule 10b-5(a), (b), and (c). Subsections (a) and (c) of Rule 10b-5, respectively, make it unlawful to "employ any device, scheme, or artifice to defraud," and to "engage in any act, practice, or course of business which operates . . . as a fraud." 17 C.F.R. § 240.10b-5(a), (c). Subsection (b) of Rule 10b-5 prohibits "mak[ing] any untrue statement of material fact" or omitting a material fact necessary to clarify prior misleading statements. 17 C.F.R. § 240.10b-5(b). "We refer to claims under Rule 10b-5(a) and (c) as 'scheme liability claims' because they make deceptive conduct actionable, as opposed to Rule 10b-5(b), which relates to deceptive statements." In re DVI, Inc. Sec. Litig., 639 F.3d 623, 643 n.29 (3d Cir. 2011), abrogated on other grounds, 133 S. Ct. 1184 (U.S. 2013).

4. For fiscal years ended June 30, 1999 through June 30, 2002, each of the audit opinions in question bears the signature, "Deloitte & Touche LLP." Neas' signature and name are not contained in the audit opinions. Def. Neas' SOF ¶¶ 5, 6. See also Deloitte's audit opinions, Defs. Neas' SOF, Ex. B, Doc. No. 261-4.

5. Deloitte's audit opinions did not contain any statements made by or attributable to Neas. Def. Neas' SOF ¶¶ 5, 6. See also Deloitte's audit opinions, Def. Neas' SOF, Ex. B, Doc. No. 261-4.

6. In discovery, Plaintiffs did not identify a single public statement made by or attributable to Neas. Also, Plaintiffs did not specify any public statement made or attributable to Neas upon which Plaintiffs relied in making their decisions to purchase or sell DVI's securities. Def. Neas' SOF ¶ 7; Pls. Objections and Responses to Defs. Deloitte's & Neas' Interrogatories Nos. 1, 2, and 9, Def. Neas' SOF, Ex. C, Doc. No. 261-5.

7. Gary Pokrzywinski, Fund Manager for WM Advisors – an investment advisor for each of the Plaintiff Funds – testified as Plaintiffs' Federal Rule of Civil Procedure 30(b)(6) designee. Def. Neas' SOF ¶ 8; Pokrzywinski Dep., 13:17-20, Def. Neas' SOF, Ex. D, Doc. No. 261-6.

8. On the day of his deposition, November 6, 2007, Pokrzywinski testified that he did not know who Neas was, never spoke with him, and never received anything in writing from him. Def. Neas' SOF & Pls. CSOF, ¶ 9; Pokrzywinski Dep., 90:6-91:6, Def. Neas' SOF, Ex. D, Doc. No. 261-6.

9. The Plaintiff Funds effectively acknowledge that prior to this litigation, they did not know who Neas was. See Def. Neas' SOF & Pls. CSOF, ¶¶ 3, 6, 7-9.

10. Pokrzywinski, when asked to identify "the first time he believed there had been some inaccuracy in DVI's financial statements," testified "that would have been after – after the bankruptcy filing." Pokrzywinski Dep., 331:3-8, Defs. Deloitte's & Neas' SOF, Ex. C, Doc. No. 264. See Compl. ¶ 10 (DVI filed for Chapter 11 bankruptcy protection on August 25, 2003).

11. Pokrzywinski testified that he believed DVI's financial statements were inaccurate because of communications he had with lawyers. Pokrzywinski Dep., 331:9-332:24, Defs. Deloitte's & Neas' SOF, Ex. C, Doc. No. 264.

12. The record does not contain any evidence that Neas made a public statement about DVI – at any time, to anybody – and none of the allegedly false and misleading statements averred in the Complaint was ever publicly attributed to him. See Compl. ¶¶ 104-181 (alleged misstatements).

13. The record does not contain any evidence of public conduct or statements made by Neas that affected the market price for DVI's securities.

14. The record does not contain any evidence that Neas publicly made or adopted any false, misleading, or fraudulent statements or omissions contained in DVI's public filings.

15. The record does not contain any evidence that the Plaintiff Funds relied on any public conduct or statements made by Neas in deciding to purchase or sell DVI's securities.

III. DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue

for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). This requires "affirmative evidence . . . from which a jury might return a verdict in his favor." Id. at 257; Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (must set forth specific facts showing the existence of a genuine issue for trial); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (ruling that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial") (citation and internal quotation marks omitted).

After adequate time for discovery, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. The moving party discharges its burden by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." Id. at 325. If the movant succeeds in doing so, there can be no genuine triable disputes because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323-25.

Plaintiffs have the burden of proving at trial their reliance upon a material misrepresentation or omission by the defendant – elements for proof in any private action under Section 10(b) and Rule 10b-5. Stoneridge, 552 U.S. at 157, 159 ("essential" elements); accord Janus, 131 S. Ct. 2301 n.3; Central Bank, 511 U.S. at 180 ("critical for recovery under 10b-5"); Basic. Inc. v. Levinson, 485 U.S. 224, 243 (1988) ("[r]eliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury").

Considering the record as a whole along with the additional facts submitted by the parties, there are no triable disputes as to the requisite reliance on a material misrepresentation or

omission by the defendant – Neas. The record does not establish that the Plaintiff Funds knew about or otherwise relied on any conduct or statements made by Neas at the time that they purchased or sold DVI's securities. The record shows just the opposite – none of the alleged misconduct and misrepresentations were publicly made by or attributed to Neas.

Nonetheless, Plaintiffs assert that this case must be distinguished from Stoneridge because that decision narrowly "declined to extend Section 10(b) liability to third parties who entered into sham transactions with the company to inflate its revenue." Pls. Br., Doc. No. 269 at 6. In their view, Neas was "not a mere third party transacting business with DVI." Id. at 6. Instead, he was "the lead engagement partner at Deloitte with responsibility for the performance of Deloitte's services at DVI," and "Neas caused Deloitte to issue each and every unqualified opinion . . . ." Pls. CSOF ¶¶ 2-4, 6-7, 9-10. Also: "Neas was in charge of the audit" and "the audit opinions would not be issued without his permission." Pls. Br., Doc. No. 269 at 6.

These assertions are not supported by the record. Neas testified: "I was the supervising partner for the engagement. . . . I had overall responsibility for the performance of our services." Feb. 7, 2008 Neas Dep, 181:14-15, 182:6-13 Decl. of James P. McEvilly, III, Ex. 1, Doc. No. 271. Other than Neas' supervision of the audits, the record does not support Plaintiffs' argument.

Reliance may not be presumed here. In a related private securities action that involved Clifford Chance's role as DVI's legal counsel,[9] our Court of Appeals ruled that Plaintiffs

---

[9] See In re DVI, Inc. Sec. Litig., No. 03-5336, 2013 WL 56073 (E.D. Pa. Jan. 4, 2013), granting summary judgment in favor of Defendants Clifford Chance LLP and Clifford Chance U.S. LLP and against Plaintiffs as to all Section 10(b) claims contained in the Complaint. (Jan. 4, 2013 Order & Mem., Doc. Nos. 847, 848). In part, it was ruled that Janus and Stoneridge as well as rulings by our Court of Appeals in DVI, 639 F.3d 623 (3d Cir. 2011) controlled the outcome – "Plaintiff investors have not produced any evidence of individualized reliance" and therefore, "Clifford Chance cannot be held liable for assisting in the alleged deceptive scheme or for making any mis-statements in DVI's public filings." Id., 2013 WL 56073 at *5, 8.

9

cannot invoke the fraud-on-the-market presumption of reliance in a private action under Rule 10b-5(a) and (c) unless the deceptive conduct has been publicly disclosed and attributed to the actor. . . . [B]ecause plaintiffs do not contend Clifford Chance's alleged role in masterminding the fraudulent 10-Q was disclosed to the public, they cannot invoke the presumption.

In re DVI, Inc. Sec. Litig., 639 F.3d 623, 649 (3d Cir. 2011), abrogated on other grounds, 133 S. Ct. 1184 (U.S. 2013). For largely the same reasons, the record here compels a similar conclusion as to Neas' position and conduct as lead engagement partner for DVI's independent auditor, Deloitte. Plaintiffs have not shown that the allegedly deceptive conduct was publicly disclosed and attributed to Neas: "It is insufficient to show only that the deceptive conduct was publicly disclosed through other statements or conduct; the public must be made aware of the defendant's acts." DVI, 639 F.3d at 648 (citations and internal quotation marks omitted); see also Stoneridge, 552 U.S. at 160 (rejecting the argument that "investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect").

The distinction proposed by Plaintiffs – high level "managerial employees"[10] as compared to other third parties such as vendors, customers, or suppliers of the company issuing securities – is immaterial:

> Stoneridge . . . did not create a remoteness test for private causes of action. The fact that the vendors' conduct was "not disclosed to the investing public," id., is what made it too remote to invoke the presumption of reliance.

---

[10] See Pls. Supp. Br., Doc. No. 313 at 12 ("managerial employees can be liable for statements not expressly attributed to them"). Plaintiffs cite inapposite cases involving the primary liability of corporate officers for making misstatements in filings with the SEC and press releases pursuant to their responsibilities and authority to act on behalf of their corporations. Id. (citing Pfizer Inc. Sec. Litig., No. 04-9866, 2013 WL 1285173, at *11 (S.D.N.Y. Mar. 28, 2013); In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig., Nos. MDL No. 1658, 2011 WL 3444199, at *24 (D.N.J. Aug. 8, 2011); Local 703 v. Reg. Fin. Corp., No. 10-2847, 2011 U.S. Dist. LEXIS 93873, at *3 (N.D. Ala. Aug. 23, 2011)). Here, there is no evidence that any member of the investing public had knowledge, either actual or presumed, of conduct or statements made by Neas.

DVI, 639 F.3d at 646-47 (quoting Stoneridge, 552 U.S. at 161; footnote omitted); see also id. & n.32 (invocation of the fraud-on-the-market presumption of reliance as to Clifford Chance precluded because "we cannot materially distinguish the facts in this case from those in Stoneridge"). See also Pugh v. Tribune Co., 521 F.3d 686, 696-87 (7th Cir. 2008) (private cause of action not stated where executive had no role in preparing or disseminating the company's financial statements or press releases, and it was not alleged that the company's investors were informed of his false certification).

Plaintiffs suggest that Neas had "a direct duty to investors." Pls. Br., Doc. No. 269 at 7. Perhaps this is an invocation of a rebuttable presumption of reliance under Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972), although no additional argument or evidence is provided. This presumption of reliance "is generally applicable only when material information is withheld from investors by a defendant having an affirmative duty of disclosure." DVI, 639 F.3d at 631 n.10 (citing Affiliated Ute, 406 U.S. at 153-54); Stoneridge, 552 U.S. at 159); see also id. at 643 n.30 (discussing the unsuccessful assertion of such a duty to disclose as to Clifford Chance).

If so proposed, such a duty to disclose would be without merit. "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic, Inc., 485 U.S. at 239 n.17. Generally, "an affirmative duty arises only when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading prior disclosure." Winer Family Trust v. Queen, 503 F.3d 319, 329 (3d Cir. 2007) (citing Oran v. Stafford, 226 F.3d 275, 285-86 (3d Cir. 2000)). See also In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 218 (E.D. Pa. 2008) (Davis, J.) ("Affiliated Ute presumption is equally inapplicable because Clifford Chance owed no duty of disclosure to

11

DVI's investors") (citing Stoneridge, 552 U.S. at 159), aff'd, 639 F.3d at 629, 643 n.30 (3d Cir. 2011)). As to Neas, no affirmative duty to disclose was ever pled. No applicable statute or case law is cited to support a finding that Neas, individually, owed a duty to disclose information to investors. On this record, Neas had no duty to disclose.

Moreover, the Plaintiff Funds have not submitted evidence of specific reliance on Neas' conduct or statements. Each Plaintiff must prove "reliance on a fraudulent material misrepresentation or omission," Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 174 (3d Cir. 2001), and reliance on the defendant's publicly disclosed, deceptive acts, Stoneridge, 552 U.S. at 159, 160-64. This includes proof that each was "aware of, and directly misled by, an alleged misrepresentation," Semerenko v. Cendant Corp., 223 F.3d 165, 178 (3d Cir. 2000), and that such statement or conduct caused each "to engage in the transaction in question," Newton, 259 F.3d at 174 (citations and internal quotation marks omitted). This Plaintiffs have not done.

Furthermore, the record does not establish any triable disputes as to whether Neas made any actionable statements. As Janus explains:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – and only by – the party to whom it is attributed.

131 S. Ct. at 2302 & n.6 ("We draw a clean line . . . – the maker is the person or entity with ultimate authority over a statement and others are not."). Under this standard, Deloitte was the maker of its own audit opinions, and DVI was the maker of its own financial statements. Only

12

Deloitte's signature appears on each the audit opinions. There is nothing within the audit opinions or implicit from surrounding circumstances that would inform investors Neas had anything to do with the audit opinions. Neas' participation in the audits was discovered only during the course of this litigation. In sum, the record is devoid of any evidence that Neas made a public statement about DVI – at any time, to anybody – and none of the allegedly false and misleading statements averred in the Complaint was ever publicly attributed to him.

Perhaps in recognition of shortcomings in the proofs, Plaintiffs contend that Deloitte's audit opinions are attributable to Neas because he he had "ultimate authority" to "modify the content of the audit opinions," and they "would not have been issued without his permission." Pls. Br., Doc. No. 269 at 7; Pls. Supp. Br., Doc. No. 313 at 12-13. This argument is speculation – and it distorts the record.

Plaintiffs say these assertions are supported by Neas' testimony. But the proposed facts are not to be found in the transcript of his testimony. Neas testified: "The decisions were made as an audit team." Neas Dep., 182:18-20, McEvilly Decl., Ex. 1. When questioned how a hypothetical disagreement among the audit team members would have been resolved, and whether Neas had the "ultimate say," he did not recall any disagreements. Id., 181:7-182:5. When asked if he had the authority to make changes in auditing papers without the auditing team's approval, he testified: "I don't recall that I did." Id., 182:21-184:12. When asked whether he had "the authority to have the final say on issues involving the audit," Neas testified: "I don't recall authority in that context, no." Id., 184:13-20. Other than Neas' testimony that he was "the supervising partner," "with overall responsibility for the performance of our [Deloitte's] services," id., 182:6-13, no other evidence is proffered.

13

Saying so is not enough. The record does not suggest that Neas had ultimate control over the audit opinons, including their content and whether and how to communicate them. There is no evidence that Deloitte's audit opinions ever referenced a statement made by Neas, or that a statement made by Neas was ever referenced in DVI's public filings or otherwise communicated to the investing public. There is no evidence that Deloitte's audit opinions were ever publicly attributed to Neas. There is no evidence that Neas endorsed or adopted as his own any statements contained in Deloitte's audit opinions or in DVI's public filings. Similarly, nothing Neas did or is alleged to have done "'made it necessary or inevitable for [DVI] to record the transactions as it did.'" Janus, 131 S. Ct. at 2303 (quoting Stoneridge, 552 U.S. at 161). Here, a reasonable juror could not conclude that the investing public relied on undisclosed conduct or statements made by Neas.

IV. CONCLUSION

Neas cannot be held liable under Section 10(b) or Rule 10b-5 for allegedly participating in DVI's scheme, or for allegedly making any misstatements contained in Deloitte's audit opinions or DVI's public filings. He also cannot be held liable as a person to whom Deloitte's audit opinions were attributed or are attributable.

Absent any evidence that Neas publicly made any false, misleading, or otherwise fraudulent statements or omissions, or engaged in any manipulative or deceptive conduct that was communicated to the investing public or specifically to the Plaintiff Funds, the record fails to establish triable disputes as to the essential elements of this private securities fraud action – a material misrepresentation or omission, manipulative or deceptive conduct, and reliance.

An Order accompanies this Memorandum.

BY THE COURT:

/s/ Legrome D. Davis
Legrome D. Davis, J